UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Melissa Higgins, | ) | Civil Action No.:4:06-3501-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | **ORDER** |
| Bruce Farmer and | ) | |
| Burroughs and Chapin, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**Procedural History**

Defendants removed this action to this Court on December 13, 2006. The Second Amended Complaint alleges federal causes of action for discrimination on the basis of sex (hostile work environment) and retaliation in violation of Title VII, 42 U.S.C. §2000e, et seq. and a state law claim for negligence against defendant Burroughs and Chapin. It alleges claims against defendant Farmer only of assault and battery, interference with contract, and negligence. It further alleges claims of intentional infliction of emotional distress and defamation against both defendants. Defendants filed a motion for summary judgment as to the plaintiff's claims on September 8, 2007.

This matter is now before the undersigned for review of the Report and Recommendation ("the Report") filed by United States Magistrate Judge Thomas E. Rogers, III, to whom this case had previously been assigned pursuant to 28 U.S.C. § 636 and Local Rule 73.02(B)(2)(g). In his Report, Magistrate Judge Rogers recommends that the defendant's motion for summary judgment be granted

1

as to the plaintiff's negligence claim against defendant Burroughs and Chapin (Count Three)[1], outrage (Count Six), Intentional Inference with Contract (Count Eight), and defamation (Count Seven). He found that the motion for summary judgment should be denied as to the plaintiff's Title VII claims against defendant Burroughs and Chapin (Counts One and Two) and her assault and battery claims against defendant Farmer (Counts Four and Five). However, the Magistrate Judge recommended a finding that the plaintiff was not constructively discharged and that, the plaintiff is not allowed as a matter of law to recover back pay, front pay, or employment benefits.

Defendants and plaintiff each filed objections to the Report on August 28, 2008. Plaintiff filed a response to the defendants' objections on September 2, 2008.

Plaintiff indicates in her objections that she agrees to abandon Counts Three, Six, Eight, and Nine and focuses her objections on Count One as it pertains to constructive discharge and Count Seven, defamation. Therefore, after thorough review, the Court adopts that portion of the Report which grants the defendants' motion for summary judgment as to Counts Three, Six, Eight, and Nine.

Defendants have filed several objections to the Magistrate's analysis of the Title VII claims. However, they do not appear to object to the recommendation that the motion for summary judgment be denied on the assault and battery claims. Therefore, the Court adopts the analysis of the Magistrate Judge as to the assault and battery claims and the motion for summary judgment is denied as to those claims.

In this Order, the Court will address the parties' respective objections to the portions of the Report relating to the Title VII claims and the defamation claim.

---

[1] Prior to the issuance of the Magistrate's Report, the plaintiff had agreed not to pursue claims of intentional infliction of emotional distress against defendant Burroughs and Chapin and her negligence claim against defendant Farmer. *See* Footnotes 1 & 2 to Report.

In conducting its review, the Court applies the following standard:

> The magistrate judge makes only a recommendation to the Court, to which any party may file written objections . . . . The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a *de novo* determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case, the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

Wallace v. Housing Auth. of the City of Columbia, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted).

**Facts**

The court agrees with the factual and procedural background as set forth by the Magistrate Judge in his Report and Recommendation.[2] The court therefore adopts the Magistrate Judge's version of the facts in this case unless indicated to the contrary herein.

**Legal Standard for Summary Judgment**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of proving that judgment on the pleading is appropriate. Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

---

[2] The plaintiff was employed as a purchasing assistant with the defendant Burroughs and Chapin from January 29, 2001 through May 15, 2006. She alleges that her supervisor, defendant Bruce Farmer, subjected her to sexual harassment from 2001 through 2006 by inappropriate touching and sexual comments at the workplace. *See* statement of facts in Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, Docket Entry # 80.

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

In this case, defendant "bears the initial burden of point to the absence of a genuine issue of material fact." Temkin v. Frederick County Commrs, 845 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986)). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48).

Moreover, "once the moving party has met its burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, of conclusory allegations to defeat a motion for summary judgment. Id. and Doyle v. Sentry, Inc., 877 F. Supp. 1002, 1005 (E.D. Va 1995). Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits (see Fed. R. Civ. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, 977 F.2d 872, citing Celotex Corp., supra. Moreover, the nonmovant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993); DeLeon v. St. Joseph Hosp., Inc., 871 F.2d 1229, 1223 n. 7 (4th Cir. 1989).

### *DEFENDANTS' OBJECTIONS*

*Defendants' Objections #1 and #2*

In their first objection, Defendants assert that the Magistrate Judge erred in recommending that the alleged harassment was "objectively and subjectively severe or persuasive (sic) as to alter the conditions of Plaintiff's employment and rendered the work place abusive. **The error being that the alleged conduct did not unreasonably interfere with Plaintiff's work performance.**" (emphasis added). In their second objection, they assert that the Magistrate "erred in recommending that Plaintiff's claim for a hostile work environment should be permitted to include Farmer's conduct beginning in 2001 until May 15, 2006. **The error being that Plaintiff's work environment was not hostile for the Plaintiff testified that she enjoyed her job, performed her job well, and continued to perform her work functions.** Therefore, the Magistrate erred in concluding that the unwelcomed conduct on the part of Farmer created a hostile work environment for the Plaintiff." (emphasis added).

It is not necessary for a hostile work environment claimant to prove that the harassment interfered with the plaintiff's performance at work. The inquiry is based on the working conditions and not solely[3] on whether the employee's job performance has been impaired. See Harris v. Forklift Systems, Inc., 510 U.S. 17, 22 (1993), concurring opinion by Justice Scalia. In addition, the plaintiff has alleged that she became physically ill as a result of the harassment and such evidence would tend to show the harassment interfered with the plaintiff's work performance. Therefore, these objections lack merit.

---

[3] "Workplace conduct is not measured in isolation; instead, 'whether an environment is sufficiently hostile or abusive' must be judged 'by looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Faragher v. Boca Raton, 524 U.S. 775, 787-788 (1998).

*Defendants' Objection #3*

In their third objection, the defendants contend that "the Magistrate erred in failing to recommend that Plaintiff's failure to report any conduct on the part of Mr. Farmer prior to February 2005 effectively barred her from asserting hostile work environment claims against B&C prior to February 2005."

The Court agrees with the plaintiff that there appear to be factual issues regarding whether she complained about the conduct before February of 2005. To the extent this objection concerns the statute of limitations, see this Court's discussion below regarding National R.R. Passenger Corp. v.Morgan, 536 U.S. 101 (2002). In addition, evidence of a plaintiff's failure to report would be relevant with respect to the Ellerth-Faragher defense[4], but this defense would only be available if the jury found there was no tangible employment action.[5] As discussed below, the plaintiff will be allowed to argue at trial the tangible employment action of failure to promote.

*Defendants' Objection #4*

---

[4] "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence . . . The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly an sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. . ." Faragher, 524 U.S. at 807.

[5] Plaintiff contends that the company's policies are ineffective as a matter of law because they do not place supervisors under a duty to report sexual harassment to upper management under Ocheltree v. Scollon Productions, Inc., 335 F.3d 325 (4th Cir. 2003). However, the plaintiff misinterprets Ocheltree. In Ocheltree, the Fourth Circuit made clear that "in deciding whether a company has reasonable complaint procedures, a jury may give negative weight to the fact that a scheme does not require a supervisor, with whom complaints of sexual harassment must be lodged in the first instance, to forward unresolved complaints to higher authority." Id. at 335. Therefore, it would be inappropriate for the Court to make a determination as a matter of law on motion for summary judgment that the policy was ineffective.

Defendants assert that "the Magistrate erred in stating that even though B&C took certain proactive steps as to disciplining Farmer, the result was not successful. Plaintiff testified that Farmer's behavior improved and subsequent to the February 2005 investigation, Farmer did not touch her at any time and that Farmer never again met with her alone unless his office door was open . . . In 2006, Plaintiff testified that Farmer rubbed her back for just a few seconds in February and that she was not harmed in any way and that this was the only time that Farmer touched her in 2006."

Plaintiff responds that Farmer testified that he did not believe he had been disciplined. In addition, Plaintiff states that Berg confirmed that, after about a month, Farmer "started his old ways again, going in there behind their desks." (Berg Dep. at 101-2). Plaintiff also points to the testimony by Scales that he saw Farmer going back into the cubicles. (Scales Dep. at 64)(Exhibit 6).

The court cannot find as matter of law, based on the evidence, that the company's efforts to discipline Farmer were successful.

### *Defendants' Objection #5*

Defendants next contend that "the Magistrate erred in concluding that B&C's actions cannot be deemed effective remedial intervening action whereby the intervening acts on the part of B&C renders the conduct by Mr. Farmer before February 2005 no longer part of the Plaintiff's hostile work environment claim. **The error being B&C did take corrective action that constituted an intervening act."** (Emphasis added.)

By way of background, in order to pursue a Title VII claim, a plaintiff must "file a complaint with the EEOC within 180 days of the incident, or within 300 days of the incident if state or local proceedings are initiated." Beall v. Abbott Labs, 130 F.3d 614, 620 (4th Cir. 1997); 42 U.S.C. § 2000e-5(e)(1); National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). In Morgan,

the Supreme Court observed that the "unlawful employment practice" in a hostile work environment claim "therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Id. at 115. Therefore, "provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Id. at 117. In addition, "the statute in no way bars a plaintiff from recovering damages for that portion of the hostile environment that falls outside the period for filing a timely charge." Id. at 119. Nevertheless, the continuing violations doctrine in the context of a hostile work environment claim is not limitless. The otherwise time-barred conduct must be related to non-time-barred conduct and the employer may take intervening curative action that cuts off the temporal reach of the hostile work environment claim. Id. at 118.

Here, the plaintiff has adduced evidence of at least one act that occurred within the statutory period. Therefore, the employer may be liable for all acts that are part of the single hostile work environment claim. Here, the acts were related and similar to the later conduct and were by the same supervisor. The Court agrees with the Magistrate Judge that the defendants' attempted corrective actions, taken in a light most favorable to the plaintiff, were not sufficient to make the conduct prior to February of 2005 no longer a part of the same hostile work environment claim. For example, there are factual issues regarding whether the plaintiff was offered the option of transferring to another department and whether the new supervisor was actually supervising the plaintiff in name only but that Farmer actually continued to supervise the plaintiff. In addition, there was evidence taken in a light most favorable to the plaintiff that the harassment continued and that the actions by the employer were in Berg's words a "slap on the wrist."

*Defendants' Objection # 6*

8

Defendants next assert that "the Magistrate erred in failing to give consideration to Plaintiff's ability to transfer to another B&C department for both Plaintiff and Mary Basden, B&C's Vice-President of Human Resources, testified that Plaintiff was offered the opportunity to transfer to an equivalent position in another department." As noted above, the evidence taken in a light most favorable to the plaintiff could support a finding that the company did not offer the plaintiff an opportunity to transfer to another department.

*Defendants' Objection # 7*

Defendants contend that "the Magistrate erred in recommending that Summary Judgment be denied on Plaintiff's hostile work environment claim because B&C cannot rely on the Ellerth-Faragher affirmative defense due to the existence of a "tangible employment action," the failure to promote. **The error being that the Plaintiff did not apply for the open purchasing position until after B&C had hired a veteran female employee for the position and after the application deadline had expired.** On April 24, 2006, there were posted several available positions on the company's public intranet, including an opening as a purchasing agent . . . The purchasing agent position had an application deadline of May 1, 2006. Unfortunately, Plaintiff did not apply for this position until more than a week after the application deadline. . . Even though, for the purposes of a Summary Judgment Motion, we must accept as truth Plaintiff's testimony that Farmer advised her she would be promoted, Plaintiff's failure to apply for the position clearly negates such as an adverse employment action."(Emphasis added.)

The Court agrees with the Magistrate Judge that the evidence was sufficient to create jury issues with regard to the failure to promote.[6] See Report, pp. 37-38.

---

[6] "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a

### *Defendants' Objection # 8*

Finally, the defendants assert that "the Magistrate erred in recommending that failure to promote the Plaintiff to a purchasing agent position was because she had been a willing participate (sic) in the investigation of Farmer's sexual harassment and thereby recommending that the Defendants' Motion for Summary Judgment be denied on the retaliation claim. **The error being that the Magistrate should have recommended that the Plaintiff's retaliation claim should be dismissed in that the Plaintiff did not apply for the open position and there was no evidence that her immediate supervisor, Danny Millwood, had any knowledge that the Plaintiff desired to be in such a position."** (Emphasis added).

Plaintiff responds that there are jury issues regarding the failure to promote and that the defendants "offer no evidence that Millwood was either the decisionmaker or the supervisor of the position, the successful candidate's own testimony belies any such notions" and shows that Farmer was her supervisor.

The Court finds that the record contains factual issues regarding this matter and the motion is accordingly denied on the retaliation claim. See Report, pp. 42-50.

### *PLAINTIFF'S OBJECTIONS*

*Plaintiff's Objection #1* (defamation)

Plaintiff asserts in her objections that the defamation claim against Farmer is not barred by the two-year statute of limitations. This objection relates to the "blonde bimbo" and "stupid" remarks allegedly made by Farmer concerning the plaintiff. The Magistrate Judge found this claim against Farmer to be time-barred since there was no evidence that the comments were made after June of 2003,

---

decision causing a significant change in benefits." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

and the Complaint was filed on May 31, 2006. Plaintiff, on the other hand, contends that Jim Scales joined the department in 2004 and that his deposition reveals that Farmer made the comment to him several times. In reviewing the deposition of Scales, it appears that he joined the purchasing department in February of 2004. (Scales Depo. p. 23) He testified that "there were numerous occasions when I first got there he referred to them as the blond bimbos. (Scales Depo. p. 19). It is unclear exactly when the comments were made to Scales. The Court agrees with the plaintiff that, based on the evidence before it at this time, the alleged defamation claim against Farmer is not time-barred as a matter of law. "A South Carolina statute of limitations is one of grace, permitting avoidance of liability, and it must be pleaded and becomes an affirmative defense with the burden of establishing it on the defendant." Gattis v. Chavez, 413 F. Supp. 33 (D.S.C. 1976), citing South Carolina Mental Health Commission v. May, 226 S.C. 108, 83 S.E.2d 713 (1954).

Plaintiff also contends that the speech to employees by President Wendel was not protected as a matter of law by qualified privilege, thus shielding the company from liability for defamation. She asserts that it cannot be found as a matter of law that Wendell's statements that she was disgruntled and conducting her business affairs in an inappropriate manner were made in good faith but rather that a jury issue exists regarding Wendel's motive. Plaintiff also contends that even if the qualified privilege defense applies, there are factual issues as to whether Wendel exceeded it.

According to the plaintiff, Wendel held a meeting of all employees who work on the fourth floor, including many other departments other than purchasing. Wendel let everyone know at the meeting that Plaintiff and Ridge were asked to leave before working their two-week notice because "they were not conducting their business affairs in an appropriate manner, period." (Wendel Dep. at 45-46 (Exh. 14)). Wendel specifically mentioned the harassment investigation and characterized

11

Plaintiff and Ridge as being "disgruntled." (Scales Dep. at 56 (Exh. 6)). Taken in a light most favorable to the plaintiff, Wendel made it clear to the employees that the company was supporting Farmer and the department one hundred percent. (Scales Dep. at 56 (Exh. 6)). Wendel allegedly told the employees to disregard the allegations and charges and told them falsely that an investigation was ongoing. (Scales Dep. at 56 (Exh. 6)).

Plaintiff contends that Wendel had no basis for his statements. He testified that his source for claiming that Plaintiff and Ridge were not conducting themselves appropriately was Spivey. (Wendel Dep. at 47 (Exh.14)). However, Spivey testified that he saw nothing inappropriate and claims he received information from Basden. (Spivey Dep. at 83-84 (Exh. 6)). Basden testified: "I don't know that they were disruptive." (Basden Dep. at 34 (Exh. 13)). Basden denies being involved in the decision not to let Ridge work a notice period. (Basden Dep. at 32-33 (Exh. 13)). Plaintiff argues that no witness has corroborated any disruptive behavior on the part of Plaintiff and Little admits that Plaintiff and Ridge were at their desks when she arrived in the department to give them their boxes and instruct them to leave.

The Court finds there are sufficient factual issues regarding the defamation claim and the qualified privilege defense to withstand a motion for summary judgment. "Whether the publication went too far beyond what the occasion required, resulting in the loss of the qualified privilege, is a question for the jury." Murray v. Holnam, Inc., 344 S.C. 129, 542 S.E.2d 743, 749 (2001).

> In general, the question whether an occasion gives rise to a
> qualified or conditional privilege is one of law for the court.
> However, the question whether the privilege has been abused
> is one for the jury." Factual inquiries, such as whether the
> defendants acted in good faith in making the statement,
> whether the scope of the statement was properly limited in its
> scope, and whether the statement was sent only to the proper
> parties, are generally left in the hands of the jury to determine

>   whether the privilege was abused.

Swinton Creek Nursery v. Edisto Farm Credit, 514 S.E.2d 126, 133 (S.C. 1999) (citations omitted).

Actual malice renders inapplicable the qualified privilege. Eubanks v. Smith, 292 S.C. 57, 354 S.E.2d 898 (1987). "Actual malice is ill will, recklessness, wantonness, or conscious indifference to the plaintiff's rights." Id., 354 S.E.2d at 902.

The Court accordingly finds that there are factual issues regarding the plaintiff's defamation claim and as to the defense of qualified privilege asserted by the defendants.

*Plaintiff's Objection #2 (Constructive Discharge)*

The plaintiff objects to the recommendation by the Magistrate Judge that she was not constructively discharged as a matter of law and that she could not recover back pay, front pay, or other employment benefits.

In Pennsylvania State Police v. Suders, 542 U.S. 129 (2004), the Supreme Court set out the standard for proving constructive discharge in a hostile work environment case. The court held that, in order to show constructive discharge in a hostile work environment claim, a plaintiff must show more than an actionable hostile work environment claim; i.e., a plaintiff must show that working conditions were "so intolerable that a reasonable person would have felt compelled to resign."[7]

The Magistrate Judge analyzes the facts regarding the constructive discharge issue as follows:

> Plaintiff testified that the last straw that caused her to resign was her evaluation conducted by Millwood on May 11, 2006, where he wrote a behavioral analysis on her and during the review he made threats that she needed to be more compliant to her

---

[7] The employer may assert an affirmative defense similar to the Faragher/Ellerth defense to the constructive discharge claim unless "the plaintiff quits in reasonable response to an employer-sanctioned adverse action officially changing her employment status or situation, for example, a humiliating demotion, extreme cut in pay, or transfer to a position in which she would face unbearable working conditions." Suders, 542 U.S. at 134.

> supervisors (himself and Farmer). Leading up to May 11, 2006, Farmer was leaning over the Plaintiff, committing some touchings, and complimenting her body, but Farmer was no longer hugging Plaintiff and no longer telling offensive stories. Farmer was also telling B&C people that Plaintiff was not a team player and that she had a bad attitude, which in the light most favorable to Plaintiff, were acts of retaliatory harassment. Although Farmer's conduct caused Plaintiff stress and unhappiness and made her working conditions more difficult, he was not physically threatening Plaintiff or stalking her or putting her in any danger. Moreover, Basden attempted to have a meeting with Plaintiff to discuss Plaintiff and Ridge's August 5, 2005, letter. It appears that Plaintiff decided not to follow through with this meeting because she thought it may not be effective. Plaintiff's failure was unreasonable. The prior hotline call resulted in a formal prompt investigation by B&C and discipline to Farmer. Also, Plaintiff could have called the hotline and/or followed the company policy to report her concerns to the President and CEO if she was uncomfortable meeting with Basden. Under the circumstances, although the evidence shows that the Plaintiff's hostile work environment was sufficiently severe and pervasive, Plaintiff's working conditions were not so intolerable that a reasonable person would have felt compelled to resign.

(Report, p. 40). Footnote six to the Report states, "It should be noted that throughout Plaintiff's employment she continued to receive raises, receive year-end bonuses which increased in amount, and by her own testimony receive fair reviews, except for the May 2006 review."

Plaintiff argues that the Magistrate Judge failed to consider the fact that the plaintiff did in fact meet with Ms. Basden in August, when she informed Basden that the harassment had continued; that Basden and management ignored the plaintiff's requests not to be assigned under Farmer; and that Basden advised her to "move on" or seek a transfer to another position.

The Court has located only one Fourth Circuit case involving allegations of constructive discharge after Suders. In an unpublished decision, Alba v.Merrill Lynch & Co., 198 Fed. Appx. 288 (4th Cir. 2006), a case decided under the ADEA, the Fourth Circuit held that the plaintiff's working conditions were not so intolerable as to establish a claim for constructive discharge under the ADEA. In that case, younger supervisors allegedly criticized the plaintiff's work and forced his son to resign and fired another trainee. In addition, they threatened him with loss of his retirement benefits if he did

14

not retire and disconnected his access to the company's computer system. The court states: "While we agree that (plaintiff's) allegations show that his working conditions were difficult and stressful, we hold that they cannot reasonably be described as intolerable." Id. at 294.

Although there appear to be factual issues regarding whether the plaintiff in fact met with Ms. Basden in August, the court finds that the plaintiff has not shown "working conditions so intolerable that a reasonable person would have felt compelled to resign." Suders at 147. In reaching this conclusion, the Court has not relied upon the affirmative defense under Suders that the employer had an effective policy for reporting complaints and that the employee unreasonably failed to take advantage of the process. The Court finds that the plaintiff has not established constructive discharge as a tangible employment action as a matter of law based upon the evidence of the alleged hostile work environment.

The plaintiff has made no other arguments regarding the recommendation by the Magistrate Judge that the plaintiff is not entitled to back and front pay other than to allege that the plaintiff was constructively discharged. Therefore, the Court finds that the plaintiff is precluded from recovering back and front pay.

### *Plaintff's Objections Regarding Faragher Defense*

The Magistrate Judge believed that the plaintiff did not avail herself of the preventative/corrective opportunities which the employer provided to stop harassment. The Court agrees that factual issues exist regarding this defense, in the event the jury finds there was no failure to promote, and rejects the finding by the Magistrate Judge that Defendants would be entitled to summary judgment regarding this defense.

*Plaintiff's Objections Regarding Retaliation Claim*

The Magistrate Judge found that the plaintiff has produced evidence of adverse employment actions sufficient to survive summary judgment in (1) unjustifiably labeling Plaintiff as a complainer and Millwood's reflecting that opinion on her behavioral review; and (2) failure to promote her to the position of purchasing agent.

Plaintiff contends that she also suffered the following adverse employment actions: (1) constructive discharge; (2) reduced pay; (3) post notice-of-resignation actions of immediate dismissal, disparagement, and Millwood's general behavior toward the plaintiff.

The Court has already found that the plaintiff was not constructively discharged as a matter of law, so she cannot rely on this as an adverse employment action in her retaliation claim.

Plaintiff also alleges that her 3% raise was lower than pre-complaint raises. Specifically, she asserts that in 2003 and 2004, due to the fact she received "Exceeds Expectations" ratings, she received pay raises of 5%. (Exhibits 44-46). She also alleges that her year-end bonus for 2005 was larger than her 2004 bonus because this included pay for temporarily doing purchasing agent work after Berg resigned and that she did not receive a raise in her base salary as a result of doing the higher-level work. (Exhibit 12) The Court agrees with the plaintiff that there are factual issues regarding whether her pay rate or amount of bonus was an adverse employment action.

Plaintiff contends that she incurred an adverse employment action when she was not allowed to work a two-week notice. However, since the employer paid the plaintiff severance pay, this did not constitute an adverse employment action.

Plaintiff also asserts that the employer's post-employment disparagement of the plaintiff as a "disgruntled" employee who did not handle her business affairs appropriately constituted an adverse

employment action. The retaliation claim is going forward with other adverse employment actions and, under Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997), "former employees are included within § 704(a)'s coverage." At this juncture, under the circumstances of this case, summary judgment is denied on this aspect of the plaintiff's argument regarding adverse employment actions.

Plaintiff additionally contends that Millwood's actions toward the plaintiff in being "constantly on (her) back" (Plaintiff's depo. at 298), heaping work on her, requiring additional projects within an hour, constantly bothering her, and accusing her of going around him were adverse employment actions since she contends that he was doing this due to her complaints regarding Farmer. Under Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006), "a plaintiff must show that a reasonable employee would have found the challenged actions materially adverse, 'which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. at 67. "Petty slights or minor annoyances" are not made actionable by an employee's decision to report discriminatory conduct. Id. at 68, citing 1B Lindemann & P. Grossman, EMPLOYMENT DISCRIMINATION LAW 669 (3d ed. 1996). The Court finds that the plaintiff should not be prohibited from taking the position at trial that the conduct by Millwood was retaliatory under the circumstances alleged in this case.

### Conclusion

For the foregoing reasons, the undersigned adopts in part and respectfully rejects in part the Report and Recommendation of the Magistrate Judge, and **GRANTS IN PART AND DENIES IN PART** the defendant's motion for summary judgment. The Motion for Summary Judgment is **GRANTED** as to the plaintiff's Third, Sixth, Eighth, and Ninth causes of action. The Motion for Summary Judgment is **DENIED** as to the First, Second, Fourth, Fifth, and Seventh causes of action.

The lawyers should consult after their review of this Order and advise the Court in writing, on the CM/ECF docket, no later than Monday, November 17, 2008 their position on consolidation of the case for trial with <u>Ridge v. Burroughs and Chapin</u>, Civil Action No. 4:06-3507, and whether they believe further mediation would be beneficial.

**AND IT IS SO ORDERED.**


Florence, SC  
November 13, 2008

<u>s/ R. Bryan Harwell</u>  
R. Bryan Harwell  
United States District Court Judge